IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**IN ADMIRALTY**

| | |
|---|---|
| BAE SYSTEMS NORFOLK SHIP REPAIR INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) )  Case No. _____ |
| THE UNITED STATES OF AMERICA, through the DEPARTMENT OF THE NAVY, and its activity, the Mid-Atlantic Regional Maintenance Center | ) ) ) ) ) |
| | ) VERIFIED COMPLAINT |
| Defendant. | ) ) |

For its Complaint against the United States of America, acting through the Department of the Navy, Mid-Atlantic Regional Maintenance Center (the "Defendant" or "Navy"), Plaintiff BAE Systems Norfolk Ship Repair Inc. ("BAE NSR") states:

## NATURE OF THE ACTION

1.      This is a civil action brought by BAE NSR under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101, *et seq.* because the Navy refuses to pay BAE NSR—and its subcontractor Tecnico Corporation ("Tecnico" or "Subcontractor")—money they are rightfully owed due to the Navy's actions and inactions.[1]

2.      BAE NSR is a leading provider of emergency and planned ship repair, modernization, and overhaul services for military customers.  BAE NSR has contracted with and

---

[1] BAE NSR is sponsoring its Subcontractor's claim under the Contract Disputes Act.

provided these services to the Navy, which is its primary customer, for more than 50 years.  BAE NSR uses subcontractors like Tecnico to help provide these services to the Navy.

3.      One such contract—and the one at issue here—concerns the USS OSCAR AUSTIN (DDG 79) (the "OSCAR AUSTIN" or "Ship").  The OSCAR AUSTIN is an Arleigh Burke-Class guided missile destroyer.  The OSCAR AUSTIN's primary mission is to give the Navy multi-mission offensive and defensive capabilities, and it can operate independently or as part of Carrier Strike Groups, Surface Action Groups, and Expeditionary Strike Groups.

4.      The Navy scheduled the OSCAR AUSTIN for repair, maintenance, and systems alterations to update and improve the Ship's naval and technical capabilities during the FY2018 Depot Modernization Period ("DMP") availability (the "Availability").  BAE NSR competed for and was awarded Contract No. N00024-19-C-4428 (the "Contract") to provide the repairs, maintenance, and systems alterations updates called for in the Contract.  The Availability was originally contracted to run from February 19, 2018 to February 1, 2019.  The Navy extended the Availability to July 5, 2019.

5.      During the DMP, there was a fire onboard the OSCAR AUSTIN.

6.      The Contract invoked DFARS § 252.217-7012 that establishes the Navy self-insured the ship from loss or damage such as the fire.  This clause also grants the Government the discretion and the obligation to determine whether it will repair the damage, how and what repairs it will undertake, and whether it will use the existing contractor or a new contractor to conduct the repairs.

7.      On January 3, 2019, the Navy issued a letter to BAE NSR stating that the Navy had determined that BAE NSR's fire recovery work would be considered a claim under DFARS § 252.217-7012.

2

8.      The Navy did not inform BAE NSR of its intentions to repair the ship until June 20, 2019, when it issued a Letter of Direction to BAE NSR to perform the fire restoration work.

9.      Contract work in areas damaged by the fire could not be resumed or completed until the Navy determined how it would repair the fire damage and who it would use to repair the damage.

10.     The Navy did not pause BAE NSR's DMP work while it spent months determining how it would repair the fire damage.  Those portions of the DMP work that could not be completed until fire restoration work was completed were significantly disrupted as it forced BAE NSR to work around the damaged portions of the ship.

11.     The Navy unilaterally modified BAE NSR's Contract by contract modification P00001 on July 26, 2019—20 days after the official Availability ended.  This modification added a cost-reimbursement contract line item number ("CLIN") for the fire restoration work to the Contract.  By this modification, the Navy agreed to compensate BAE NSR for all costs it incurred for fire damage repairs.

12.     The Navy is responsible for BAE NSR's Program Management Office ("PMO") and Time Related Services ("TRS") costs incurred between July 6, 2019, and January 29, 2021 for the fire restoration services directed by the Navy.  For these reasons, and the information provided below, BAE NSR seeks fair and reasonable compensation of $13,547,379.

13.     The Navy has not paid BAE NSR or its Subcontractor for all of the costs they incurred after July 6, 2019, while performing the fire restoration services directed by the Navy.

14.     FAR § 52.243-7 requires the Navy to "make an equitable adjustment" to the Contract to reimburse BAE NSR for the cost it incurred as a result of unilateral contract modification P00001.

15.    By failing to pay BAE NSR and its Subcontractor the amounts requested in the Claim, the Navy breached the Contract causing BAE NSR and its Subcontractor to suffer damages. Thus, BAE NSR and its Subcontractor must seek the Court's assistance to require the Navy to do what FAR § 52.243-7 requires—pay BAE NSR and its Subcontractor the costs to which they are entitled for the work performed.

## PARTIES

16.    Plaintiff BAE NSR is a Virginia corporation with its principal place of business located at 750 West Berkley Avenue, Norfolk, Virginia 23523.

17.    Defendant is the United States of America, acting through the Department of the Navy, Mid-Atlantic Regional Maintenance Center, located at 9727 Avionics Loop, Norfolk, Virginia 23511.

## JURISDICTION AND VENUE

18.    BAE NSR has complied with all the requirements of the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101, *et seq.* to seek payment of the additional monies still owed to it and its Subcontractor.

19.    Jurisdiction in this Court is proper because (i) this action is a claim for a maritime matter, i.e., a ship repair issue, brought under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101, *et seq.* (the "CDA") arising from the Contract; and (ii) this is an admiralty and maritime claim under Fed. R. Civ. P. 9(h) and brought in accordance with CDA 41 U.S.C. § 7102(d) for "Maritime contracts" under the Suits in Admiralty Act, 46 U.S.C. §§ 30901, *et seq.*, and the Public Vessels Act, 46 U.S.C. §§ 31101, *et seq*.

20.    Venue is proper in this Court under 28 U.S.C. § 1391 and Local Rule 3(C) because (i) CDA §§ 7102(d) and 7104(b) permit BAE NSR to sue in this United States District Court; (ii)

BAE NSR repaired the Ship in Norfolk, Virginia but the Navy did not pay BAE NSR and its Subcontractor for all of their services, thus the events giving rise to BAE NSR's claims occurred in this Court's District and Division; (iii) BAE NSR resides and has its principal place of business in Norfolk; (iv) the Navy executed the Contract in Norfolk; and (v) the Navy has facilities and a presence in Norfolk.

21.     BAE NSR properly requests service under Fed. R. Civ. P. 4.

## FACTUAL BACKGROUND

### A.     The DMP Contract

22.     During all relevant times, the OSCAR AUSTIN was located either at BAE NSR's Norfolk Shipyard or at the Navy's Norfolk, Virginia facility.

23.     The OSCAR AUSTIN was due for scheduled repairs and maintenance during the Availability scheduled to run from February 19, 2018 to February 1, 2019.  The Navy conducted a competitive procurement to select a contractor to perform work on the Ship.  BAE NSR submitted a competitive proposal for the work.

24.     On December 22, 2017, the Navy awarded BAE NSR the Contract to provide specified work on the OSCAR AUSTIN.  The Contract was for a firm, fixed price.

25.     BAE NSR's fixed price for the availability included Program Management costs and the costs for Time Related Services.

26.     By contract modification A00018,  the Navy extended the period of performance from February 1, 2019 to March 7, 2019.  The period of performance was subsequently extended from March 7, 2019 to June 14, 2019 via contract modification A00019 and extended from June 14, 2019 to July 5, 2019 via contract modification A00024.

### B.     The Fire and Navy's Response

27.     On November 10, 2018, a fire broke out during hotwork operations that caused extensive damage to the Ship.  This damage impacted DMP work BAE NSR had already performed, complicated the scheduling and planning of the DMP work not yet finished, and completed DMP work that the fire had affected.

28.     BAE NSR provided a Notice of Claim for the fire on November 11, 2018.

29.     The Navy spent considerable time determining its plan to fix the fire damage. Under DFARS § 252.217-7012, the Navy held financial responsibility for fixing the damage and the discretion to decide how to repair the damage and who would repair the damage. DFARS § 252.217-7012 states in relevant part:

> Unless otherwise directed or approved in writing by the Contracting Officer, the Contractor shall not carry insurance against any form of loss or damage to the vessel(s) or to the materials or equipment to which the Government has title or which have been furnished by the Government for installation by the Contractor. The Government assumes the risks of loss of and damage to that property.

30.     The Navy did not timely develop a coherent acquisition strategy to address the fire restoration work and remaining DMP work.  This significantly delayed and disrupted BAE NSR's performance of the Contract.

### C.     Timeline of Events after the Fire

31.     On November 29, 2018, BAE NSR requested that the Navy provide guidance as to its intentions to repair the damage caused by the fire.

32.     On January 3, 2019, the Navy issued a letter to BAE NSR stating that the Navy had determined that BAE NSR's fire recovery work would be considered an insurance claim under DFARS § 252.217-7012.  On April 19, 2019, the Navy issued a letter to BAE NSR asking BAE NSR to prepare, by April 26, 2019, a rough order of magnitude ("ROM") estimate and proposed schedule for the scope of fire restoration work defined in the letter.  The Navy also informed BAE

NSR that it would not decide whether BAE NSR would be directed to complete the fire restoration work until it had reviewed BAE NSR's ROM submission.

33.     BAE NSR timely submitted its ROM and schedule, based on the scope of work the Navy identified in its April 19, 2019 ROM request.  BAE NSR's ROM included a schedule for completing the Availability by January of 2021.  Importantly, the ROM informed the Navy that it was based on conditions known at the time and was subject to change depending on discovery of additional damage and comprehensive system retest requirements.

34.     On May 17, 2019, the Navy issued a Letter of Direction to BAE NSR to perform the fire restoration work.

35.     On June 20, 2019, the Navy formally notified BAE NSR that  it had accepted the risk of loss for the fire pursuant to DFARS § 252.217-7012.

36.     On July 5, 2019, the Contract's period of performance ended.

37.     On July 26, 2019, the Navy unilaterally modified BAE NSR's existing Contract to add fire restoration scope and cost-reimbursement CLIN 0045 and SLIN 0045AA to fund the fire restoration work.

38.     The Navy incrementally funded the contract modification.

39.     Contract modification P00019 did not expressly extend the Availability beyond July 5, 2019.

40.     The fire restoration work added scope that the Navy knew would take until January 2021 to complete.

41.     Unilateral Contract modification P0001 constructively extended the Contract to complete the fire restoration scope it added to the Contract.

42.     On August 8, 2019, the Navy and BAE NSR met to discuss schedule concerns associated with the completion of the remaining original DMP Contract work.  After that meeting, BAE NSR notified the Navy that additional required fire restoration work would further extend the schedule.  Similar notifications followed on August 29, 2019 and October 2, 2019, with the latter reserving BAE NSR's rights in accordance with DFARS § 252.217-7003 and FAR § 52.242.17 to submit a request for an equitable adjustment to the contract price and schedule for Navy-responsible delays.

43.     BAE NSR performed and completed the directed fire restoration work by January 29, 2021.

**D.     The Navy's Payment for BAE NSR's Fire Restoration Work**

44.     BAE NSR's bid proposal did not include, and the Contract did not provide, an amount to compensate BAE NSR for PMO and TRS costs incurred after the Availability was extended.

45.     The Navy compensated BAE NSR for its fire restoration labor and material costs under the cost plus CLIN added by Contract Modification P0001.

46.     The Navy has not compensated BAE NSR for the daily support costs associated with BAE NSR's performance of the fire restoration work added to the Contract by Contract modification P00001.

47.     The daily support costs the Navy owes BAE NSR are PMO costs and TRS.

48.     PMO encompasses the cost of support functions such as extended program management, project management, quality assurance, safety/environmental, supervision, security, testing, material handling, purchasing staff, and administration.

49.     BAE NSR treats PMO as a direct labor charge in its estimating, time keeping, and accounting systems.  This is consistent with BAE Systems' Disclosure Statement, which clearly identifies PMO as a direct cost, rather than indirect or overhead costs.

50.     TRS costs include Internet Connectivity, Air Conditioning, Support Services for the Navy, its agents and contractors, Facilities, including but not limited to: Piers, Office spaces, Trailers, Parking, Flammable Liquid Storage and Hazardous Material Storage, Material Warehousing and Lay-down space, Program Management & Supervision, Integration & Scheduling, Cleaning (except tank cleaning), Quality Assurance, Execution Planning, Security, Administration, Other Indirect Support, Safety/Environmental, and Transportation.

51.     BAE NSR treats TRS cost as direct costs.

52.     The PMO and TRS costs were not included in the fire restoration labor and material charges paid by the Navy.

53.     BAE NSR and its Subcontractor have not been compensated for the daily support costs it and its Subcontractor incurred to complete the fire restoration work *after* the Availability period of performance ended.   BAE NSR seeks fair and reasonable compensation for these allowable and allocable actual costs.

**E.      BAE NSR's Request for an Equitable Adjustment**

54.     The Navy refused to pay BAE NSR and its Subcontractor certain amounts owed for work performed at the Navy's direction after the Contract period of performance expired.

55.     BAE NSR was not the only party the Navy refused to pay for their work.  BAE NSR's Subcontractor also provided services not contemplated by the Contract. Thus, to obtain payments owed but not paid to it, the Subcontractor submitted its own Request for Equitable

Adjustment, which was incorporated into BAE NSR's REA.  BAE NSR also requested payment of its mark up for the costs in its Subcontractor's REA.

56.     As outlined above, on September 30, 2021, BAE NSR properly submitted an REA to the Navy to obtain the amounts BAE NSR and its Subcontractor are entitled to receive.

57.     BAE NSR's REA incorporated its Subcontractor's REA.

58.     On November 16, 2021, the Navy rejected the REA, citing NMCARS 5252.233-9103 and insufficient documentation of costs for the REA.

59.     The Navy rejected the REA taking the position that neither BAE NSR nor its Subcontractor were entitled to additional compensation for the PMO and TRS performed in support of fire restoration services directed by Contract modification P0001.

### F.     Subcontractor Tecnico's Request for an Equitable Adjustment

60.     BAE NSR sponsored an REA on behalf of Tecnico Corporation ("Tecnico") for costs to support time extensions for the periods July 6, 2019, to January 22, 2020 in the amount of $371,323 and January 23, 2020 to October 18, 2020 in the amount of $176,180, for a total of $547,503.

61.     When preparing its bid, Tecnico used industry-standard assumptions and Navy past practices developed over decades as a ship repair contractor.  The constructive change to the Contract and Tecnico's Subcontract resulted in additional costs.

62.     The Navy's delays, constructive change to the Contract, and failure to compensate Tecnico for its costs, breached the Changes Clause of the Contract.

63.     Under the theories referenced above and in its REA, BAE NSR seeks to recover the full amount requested of $13,547,379 plus interest, costs, and fees.

### G.     The Contracting Officer's Final Decision

64.     On May 17, 2022, BAE NSR converted its REA into a properly certified claim under 41 U.S.C. § 7103(b) and 48 C.F.R § 33.207 (the "Claim"), which demanded in writing a sum certain as a matter of right and sought a Contracting Officer's Final Decision ("COFD").

65.     On May 19, 2022, the Navy requested the Defense Contract Audit Agency ("DCAA") audit BAE NSR's COFD.

66.     DCAA, after conducting its audit, stated that it could not allocate costs specifically to the fire restoration, but did reconcile costs to the general ledger and verified materials costs, and that the Subcontractor had not been paid.

67.     The Navy issued the Contracting Officer's Final Decision on March 20, 2023, denying the Claim in its entirety.

68.     By failing to pay BAE NSR and its Subcontractor the amounts requested in the Claim, the Navy breached the Contract causing BAE NSR and its Subcontractor to suffer damages. Thus, BAE NSR and its Subcontractor must seek the Court's assistance to do what the Navy should have done in the first instance—pay BAE NSR and its Subcontractor the costs to which they are entitled for the efforts performed.

69.     The COFD ignores BAE NSR's supported claims for itself and its Subcontractor.

70.     The position taken by the Navy in its COFD was unreasonable, an abuse of discretion, and/or not in accordance with the terms of the Contract and the relevant law and facts.

71.     The Court should not allow the COFD to stand and should require the Navy to compensate BAE NSR and its Subcontractor for the work they performed and for which the Navy refuses to pay.

**F.**     **Entitlement**

72.     BAE NSR is entitled to all allowable, allocable, and reasonable PMO and TRS costs associated with performing the added fire restoration work.

73.     The Navy is responsible for BAE NSR's PMO and TRS costs incurred to support the fire restoration work and the remaining DMP work performed between July 6, 2019, and January 29, 2021.

74.     The Navy's refusal to compensate BAE NSR for these costs is unreasonable, contrary to the plain language of DFARS § 252.217-7012, DFARS § 252.217-7003, and FAR § 52.243-2, and demonstrated a failure to cooperate with BAE NSR.

   a.   <u>Directed Fire Restoration Work Pursuant to DFARS § 252.217-7012</u>

75.     When the government determines that it has assumed the risk of loss and orders a contractor to proceed with repair work pursuant to DFARS § 252.217-7012, it is required to "reimburse the Contractor for the reasonable, allowable cost of the replacement or repair, plus a reasonable profit…"

76.     The Navy assumed the risk of loss and directed BAE NSR to perform fire restoration activities to remedy the loss.

77.     BAE NSR is entitled to recover all reasonable and allowable costs incurred to perform the repair work plus reasonable profit.  This necessarily includes PMO and TRS costs associated with BAE NSR's fire restoration performance.

78.     Because essentially all the fire restoration work was performed after July 5, 2019, and certain DMP work could not be completed until fire restoration work completed, none of the remaining DMP work was supported by the Contract's PMO and Temp Services.

79.     In a June 20, 2019 letter to BAE NSR, the Navy stated:

> In accordance with 252.217-7012(g)(1)(ii), because the Government has determined that the damage is within the scope of the risks assumed by the Government under reference (e), ***the Government will reimburse BAE for the reasonable, allowable cost of the work performed***, less any cost reimbursed by an alternate insurer, less the deductible amount of $50,000 as specified in 252.217-7012(b)(6).

12

80.     Contract modification P00001 also expressly states: "in accordance with DFARS Clause 252.217-7012 LIABILITY AND INSURANCE (AUG 2003), *the Government will reimburse the contractor for the cost incurred for the fire damage repairs less the deductible amount of $50,000.*"

      b.  <u>Navy Directed Change to Pursuant FAR § 52.243-2 and DFARS § 252.217-7003</u>

81.     When the government orders changes to a contract, which necessarily extend the period of performance, it is required to compensate the contractor for costs associated with the change.  This is true even when, as here, the government fails to make an express adjustment to the period of performance associated with the change.

82.     As stated in DFARS § 252.217-7003(b): "If a change causes an increase or decrease in the cost of, *or time required for*, performance of the job order, *whether or not changed by the order,* the Contracting Officer shall make an equitable adjustment in the price or date of completion, or both, and shall modify the job order in writing" (emphasis added).

83.     The Navy unilaterally modified the Contract to add fire restoration scope on July 26, 2019.

84.     This unilateral Navy action constructively extended the contract so that BAE NSR could perform the directed fire restoration work.

85.     PMO and TRS costs are allowable and allocable costs incurred to support Contract work being performed.

86.     BAE NSR incurred substantial PMO and TRS costs during its fire restoration activities between July 6, 2019, and January 29, 2021.

87.     Because BAE NSR relies on direct costs to identify the labor and materials/other direct costs in its calculation of PMO and TRS costs, this action seeks actual costs incurred.

13

Because these costs represent actual costs from BAE NSR's approved accounting system, they are reasonable.

88.     The Navy issued a change to the Contract, to add the fire restoration work, and then delayed BAE NSR's ability to perform its work until after the Availability had ended.  By doing so, the Navy constructively extended the period of performance of the Availability for the total Contract.  Having done so, especially for work performed under cost reimbursable CLINs, the Navy is obligated to pay the costs associated with the time to perform the work.  This includes PMO and TRS costs, which have already been established as allowable and allocable for other availability extensions.

89.     The Navy has a duty to compensate BAE NSR for PMO and TRS costs incurred during what should have been an extended Availability and based the Navy's prior course of dealing on other ship repair contracts.

90.     BAE NSR is therefore entitled to compensation for these costs pursuant to DFARS § 252.217-7003, DFARS § 252.217-7012, and FAR § 52.243-2.

c.   Government-Caused Delays

91.     Navy actions and inaction delayed BAE NSR's ability to perform its DMP work within the Contract availability period.

92.     The Navy's delay in determining an acquisition strategy for the fire restoration work delayed BAE NSR's ability to complete its DMP work in accordance with the original Contract schedule.

93.     After the fire, the Navy was obligated to timely determine the fire restoration efforts it intended to undertake and obtain the necessary funding and develop a plan to enable the continuation of the DMP availability unimpeded, under a clear and reasonable scope of work and schedule.

94.     The cause of the fire was quickly determined, so there is no reasonable justification for the Government taking more than seven (7) months to determine how it would proceed with fire restoration repairs under DFARS § 252.217-7012.

95.     The Navy's lengthy period of indecision before issuing the fire restoration change, at the end of the Availability, caused an unreasonable delay to the work.

96.     Government inaction forced BAE NSR to work in an extremely inefficient environment.

97.     The Navy's assigning certain work to another contractor working under a separate contract constructively extended the Contract, and BAE NSR could not finish the DMP work until this other contractor finished its work.

98.     While the DMP work was included in BAE NSR's Contract, the costs associated with the additional time to complete it that resulted from Navy responsible delay was not.

99.     BAE NSR is entitled to all PMO and TRS costs incurred from July 6, 2019, through January 29, 2022, as these costs would not have been incurred but for Navy direction and Navy responsible delay.

100.    BAE NSR is entitled to an equitable adjustment for the costs it incurred during this time period pursuant to the terms of Contract modification P00001, FAR § 52.243-7, Notification of Changes, FAR § 52.243-2, Changes-Cost-Reimbursement, DFARS § 252.217-7003, Changes, DFARS § 252.217-7012, Liability and Insurance, and NAVSEA § 5252.233-9107, Equitable Adjustments, and well-established federal procurement law.

**G.  Relevant Contract Clauses and Contract Modification P00001, Note D.**

101.    The Contract includes DFARS § 252.217-7012 Liability and Insurance, which states in pertinent part:

**DFARS § 252.217-7012 Liability and Insurance (AUG 2003)**

\* \* \*

(g) In the event or loss of or damage to any vessel(s), material, or equipment which may result in a claim against the Government under the insurance provisions of this contract, the Contractor shall promptly notify the Contracting Officer of the loss or damage. The Contracting Officer may, without prejudice to any other right of the Government, either—

 (1) Order the Contractor to proceed with replacement or repair, in which event the Contractor shall effect the replacement or repair;

  (i) The Contractor shall submit to the Contracting Officer a request for reimbursement of the cost of the replacement or repair together with whatever supporting documentation the Contracting Officer may reasonably require, and shall identify the request as being submitted under the Insurance clause of the agreement.

  (ii) If the Government determines that the risk of the loss or damage is within the scope of the risks assumed by the Government under this clause, ***the Government will reimburse the Contractor for the reasonable, allowable cost of the replacement or repair, plus a reasonable profit (if the work or replacement or repair was performed by the Contractor) less the deductible amount specified in paragraph (b) of this clause.***

 (iii) Payments by the Government to the Contractor under this clause are outside the scope of and shall not affect the pricing structure of the contract, and are additional to the compensation otherwise payable to the Contractor under this contract; or…(Emphasis added).

102. The Contract also includes DFARS § 252.217-7003 Changes, which states in part:

**DFARS § 252.217-7003 Changes (DEC 1991)**

16

(a) The Contracting Officer may, at any time and without notice to the sureties, by written change order, make changes within the general scope of any job order issued under the Master Agreement in—

(1) *Drawings, designs, plans, and specifications*;
(2) *Work itemized*;
(3) Place of performance of the work;
(4) Time of commencement or completion of the work; and
(5) Any other requirement of the job order.

(b) *If a change causes an increase or decrease in the cost of, or time required for*, performance of the job order, *whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the price or date of completion, or both*, and shall modify the job order in writing. (Emphasis added).

103.    The Contract also includes the following equitable adjustment clause:

**5252.233-9107   EQUITABLE   ADJUSTMENTS:   WAIVER AND RELEASE OF CLAIMS (AT) (JAN 1983)**

(a) Whenever the Contractor, after receipt of a change made pursuant to the clause of this contract entitled "CHANGES" or after affirmation of a constructive change under the "NOTIFICATION OF CHANGES" (FAR 52.243-7) requirement, submits any claim for equitable adjustment under the foregoing, such claim *shall include all types of adjustments in the total amounts to which the foregoing entitle the Contractor*, including but not limited to adjustments arising out of delays or disruptions or both caused by such change.

(b) Further, the Contractor agrees (except as the parties may otherwise agree) that, if required by the Contracting Officer, it will execute a release, in form and substance satisfactory to the Contracting Officer, as part of the supplemental agreement setting forth the aforesaid equitable adjustment, and that such release shall discharge the Government, its officers, agents and employees, from any further claims including but not limited to further claims arising out of delays or disruptions or both, caused by the aforesaid change. (Emphasis added).

104.    Contract   modification   P00001   added   FAR   §   52.243-2   Changes-Cost Reimbursement (APR 1984).  Alternate II of this clause, which applies to services, states in part:

**52.243-2 Changes-Cost-Reimbursement Alternate II (APR 1984)**

(a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:

(1) *Description of services* to be performed.
(2) Time of performance (i.e., hours of the day, days of the week, etc.).
(3) Place of performance of the services.

(b) *If any such change causes an increase or decrease in the estimated cost of, or the time required for*, performance of any part of the work under this contract, *whether or not changed by the order*, or otherwise affects any other terms and conditions of this contract, *the Contracting Officer shall* make an equitable adjustment in the-

(1) *Estimated cost, delivery or completion schedule, or both*;
(2) Amount of any fixed fee; and
(3) Other affected terms and shall modify the contract accordingly. (emphasis added).

105.    The Navy's unilateral Contract modification P00001 also includes "Note D," which

states:

Whereas, on 10 November 2018, a fire occurred on board the USS Oscar Austin (DDG-79) which resulted in significant fire damage to the vessel.

Whereas, BAE provided notification to the PCO on 11 November 2018 of its claim under DFARS Clause 252.2177012 LIABILITY AND INSURANCE (AUG 2003) as a result of damage to the vessel.

Whereas, the PCO via the ACO provided technical concurrence for BAE to proceed with repairing the fire damage while awaiting a determination whether the damage caused by the fire was a risk assumed by the Navy under DFARS Clause 252.217-7012 LIABILITY AND INSURANCE (AUG 2003).

Whereas, the PCO has determined that the damage caused by the fire was a risk assumed by the Government under DFARS Clause 252.217-7012 LIABILITY AND INSURANCE (AUG 2003).

As such, in accordance with DFARS Clause 252.217-7012 LIABILITY AND INSURANCE (AUG 2003), the Government will reimburse the contractor for the cost incurred for the fire damage repairs less the deductible amount of $50,000. The Government will unilaterally fund and order the contractor to proceed with all remaining repairs, in which event, the contractor shall effect the repairs. The contractor shall submit to the Contracting Officer a request for reimbursement of the incurred cost of the repair together with whatever supporting documentation the Contracting Officer deems necessary, and shall identify the request as being submitted under the insurance clause of this contract (See Note A in WAWF clause). Each request for reimbursement will be reviewed by the Contracting Officer for costs incurred and approved by the Contracting Officer prior to the contractor's submittal in Wide Area Work Flow (WAWF) for payment. Payments will be approved unilaterally based on documentation provided for costs incurred.

106.     These clauses are clear and unambiguous.  When the Government adds new scope to or extends an existing contract, the Government is required to provide the contractor with an equitable adjustment to the contract price and/or schedule.  While BAE NSR does not dispute that it received compensation for costs to perform fire restoration activities, the Navy's failure to compensate BAE NSR for its allowable, allocable, and reasonable PMO and TRS costs violates the Contract in that modification P00001 affirmatively states that the Navy will reimburse BAE NSR for the cost it incurred to perform fire damage repairs.  Such costs necessarily include PMO and TRS costs.

107.     Similarly, when the Government unreasonably delays the addition of work, under the Changes clause, it is responsible for any costs the Contractor incurs due to the Government's unreasonable delay.

108.     Here, the fire occurred on November 10, 2018, and the Navy added Contract modification P00001 on July 26, 2019.  While the fire was clearly an event that would be a covered event under DFARS § 252.217-7012, the Navy took seven (7) months to decide to accept its obligations under § 252.217-7012.  It then took another month to add the fire restoration

CLIN/SLIN to the Contract.  It took the Navy more than eight (8) months to make a decision on the fire restoration work and to direct BAE NSR to perform that work.  This is an unreasonable delay.

109.    BAE NSR is entitled to be compensated for costs it incurred because of the Navy's unreasonable delay to direct BAE NSR to perform the fire restoration work.

<u>**COUNT I**</u>

**DISPUTE UNDER THE CONTRACT—APPEAL OF THE FINAL DECISION**

110.    BAE NSR repeats and re-alleges the allegations in all the preceding paragraphs as if fully set forth herein.

111.    BAE NSR and its Subcontractor successfully completed all of the work required under the Contract or requested of them by the Navy, including the many changes directed in writing by the Contracting Officer and accepted by the Navy, and have complied with all prerequisites and conditions precedent for filing this action.

112.    The Contract's terms and conditions include the Changes Clause, which entitles BAE NSR to payment for changes that increase the cost of, or the time required for, performance of any part of the work under the Contract.

113.    BAE NSR is also entitled to seek compensation on behalf of its Subcontractor for additional costs and damages it incurred due to Navy changes that caused an increase in the cost of, or the time required for, performance of any part of the work under the Contract.

114.    The Navy has failed to adjust the cost and schedule of this Contract for such changes it directed and has failed to negotiate such changes and impacts, and to issue timely extensions in accordance with the Contract and its terms, which are incorporated herein by reference.

115.     As a result of these contractual failures, BAE NSR and its Subcontractor have a right to recover the entire amount of the incurred damages resulting from the Navy's delays and disruptions.  BAE NSR is entitled to the unpaid amount of $13,547,379 plus interest, costs, and fees as may be allowable under applicable Federal Law or such other amount as the evidence may reveal.

116.     BAE NSR seeks the adjustment requested in Count I only as an alternative pleading to the amount sought in Counts II and III.

<u>**COUNT II**</u>

**BREACH OF CONTRACT**

117.     BAE NSR repeats and re-alleges the allegations in all the preceding paragraphs as if fully set forth herein.

118.     BAE NSR and its Subcontractor successfully performed all of their obligations, and have complied with all prerequisites and conditions precedent under the Contract and have a right to fair and reasonable compensation for their work as an equitable adjustment for the cost of the Navy's changes to the Contract.

119.     Under the Contract, BAE NSR is entitled to payment for any changes in the work scope, means, and methods of performance and government-furnished materials, services, and equipment, and is entitled to an equitable adjustment for the cost of such changes and extensions.

120.     Navy delay in determining the path forward on the fire restoration work and directing performance of fire restoration work after the end of the Contract's period of performance constructively extended the Contract.

121.     Under Federal Acquisition Regulation § 43.204(b)(1), the Navy must negotiate equitable adjustments under the Contract and settle all outstanding changes in the "shortest

practicable time."  The Navy has failed to do so despite knowing BAE NSR and its Subcontractor are entitled to equitable adjustments.

122.    The Navy also owes every contractor the duty to cooperate.

123.    The Navy's failure to pay the full $13,547,379 for work successfully completed by BAE NSR and its Subcontractor and accepted by the Navy is a breach of the Contract, including, but not limited to, breaching its obligations under the Federal Acquisition Regulations relating to contract performance and settling changes.

124.    The Navy's Contract breach has also damaged BAE NSR causing it to lose the time value of the money that the Navy owes BAE NSR and in having to expend significant amounts of legal and administrative costs to pursue this action.

125.    BAE NSR thus seeks breach of contract damages of $13,547,379, as explained in the Claim, plus such interest, costs and fees as may be allowable under applicable Federal Law, or such other amount as the evidence may reveal.

126.    BAE NSR seeks the adjustment requested in Count II only as an alternative pleading to the amount sought in Counts I and III.

## COUNT III

## QUANTUM MERUIT

127.    BAE NSR repeats and re-alleges the allegations in all the preceding paragraphs as if fully set forth herein.

128.    As explained above, BAE NSR provided additional and/or changed work, and applied additional labor, manpower, materials, subcontractor(s), and equipment as required to fulfill the Navy's directions as a result of the delay and disruption and during the constructive

extensions ("Additional Work"), even when those instructions exceeded the Contract's requirements.

129.    The Navy requested BAE NSR and its Subcontractor perform the Additional Work. But the Navy and BAE NSR and its Subcontractor did not agree on the price the Navy would pay for the Additional Work.

130.    The Navy received the benefit of the Additional Work but has not paid BAE NSR and its Subcontractor for that work.

131.    If the Navy is not required to pay for the Additional Work under the Contract, it would be inequitable for the Navy to benefit from such efforts and expenditures without paying a reasonable or fair value for that work.

132.    The Navy benefited from the Additional Work in the amount of $13,547,379.

133.    The Navy should pay, as quantum meruit damages, to BAE NSR and its Subcontractor, the amount of $13,547,379 or such additional amounts as the evidence may reveal.

134.    BAE NSR seeks the amount requested in Count III only as an alternative pleading to the amount sought in Counts I and II.

## **PRAYER FOR RELIEF**

WHEREFORE, BAE NSR respectfully requests that this Court enter judgment in BAE NSR's favor and against the Navy and award the following relief:

A.      Award BAE NSR $13,547,379 plus interest, costs and fees under the Contract's terms for work successfully completed and accepted;

B.      Award BAE NSR interest as permitted under any applicable legal theory, the Contract, statute, or regulation, including, without limitation, the CDA;

C.      Award BAE NSR its costs and attorneys' fees incurred to the full extent permitted under any applicable legal theory, the Contract, statute, or regulation; and

D.      Grant such other and further relief as the Court deems just and proper to award BAE NSR a complete remedy.


Dated:  18 March 2024                              Respectfully submitted,


_s/ Alex E. Wallin_
Alex E. Wallin (VA Bar Number 81058)
Taft Stettinius & Hollister LP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 357-9445
(513) 381-0205 (facsimile)
awallin@taftlaw.com

*Counsel for Plaintiff BAE Systems Norfolk Ship Repair, Inc.*

Of Counsel:

Barbara A. Duncombe
Taft Stettinius & Hollister, LP
1 Indiana Square, Suite 3500
Indianapolis, IN 46204
(317) 713-3461
(317) 713-3699 (facsimile)
bduncombe@taftlaw.com

Suzanne Sumner
Taft Stettinius & Hollister LP
40 N. Main Street, Suite 1700
Dayton, OH 45423
(937) 641-1752
(937) 228-2816 (facsimile)
ssumner@taftlaw.com

## <u>VERIFICATION</u>

The undersigned, Bill Gable, Contracts Manager, BAE Systems Norfolk Ship Repair Inc., Plaintiff here, herby certified that (a) he has read the allegations of the foregoing complaint, and provided legal counsel with the information on which it is based; (b) that to the best of his knowledge and belief the allegations in the Complaint are accurate and complete; and (c) that this statement is made under penalty of perjury in accordance with 28 U.S.C. § 1746.

By: _____
       Bill Gable, Contracts Manager
       BAE Systems Norfolk Ship Repair Inc.

Dated: 18 March 2024